UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In Re:                                                          Case No. 17-17314-PGH

ROCK ELITE FITNESS, LLC,
                                                                Chapter 11
    Debtor.

_____/

## CREDITOR JAMESTOWN VILLAGE COMMONS, L.P.'S MOTION FOR RELIEF FROM AUTOMATIC STAY OR, IN THE ALTERNATIVE, MOTION TO COMPEL DEBTOR TO ASSUME OR REJECT UNEXPIRED LEASE

Creditor/Landlord, Jamestown Village Commons, L.P. ("Jamestown"), by and through undersigned counsel and pursuant to 11 U.S.C. §§ 362(d) and 365, and Federal Rules of Bankruptcy Procedure 6006(b) and 9014, hereby files this Motion for Relief from the Automatic Stay or, in the alternative, to the extent an assumable lease exists, to compel Debtor ROCK ELITE FITNESS, LLC ("Debtor") to assume or reject such unexpired lease pursuant to § 365 (the "Motion"), stating as follows:

## I.  INTRODUCTION

As a consequence of the Debtor's failure to satisfy its post-petition obligations under the terms of the subject lease agreement (the "Lease") including, but not limited to, the timely payment of all post-petition rent under the Lease, Jamestown seeks relief from the automatic stay for cause under § 362(d)(1).  Alternatively, to the extent the Lease (as amended and modified) is assumable under § 365, based on the ongoing defaults (pre and post-petition) by the Debtor, the lack of any record to suggest a capability by the Debtor to either cure said defaults or provide adequate assurance of future performance, in addition to Jamestown's intent to exercise its right of termination of the Lease for Debtor's failure to meet its 2016 calendar year gross sales per square foot operating condition under the terms of the subject lease documents, Jamestown seeks to

compel the Debtor to assume or reject the Lease within a shortened time period pursuant to § 365(d)(2). Accordingly, for the reasons further discussed below, Jamestown respectfully requests entry of an Order by this Court granting stay relief to allow Jamestown to enforce its rights under the subject lease documents, including the right of termination, in addition to applicable state law or, alternatively, compelling the Debtor to assume or reject the Lease within a specified period of time.

## II.    **BACKGROUND**

1.      On June 12, 2017 (the "Petition Date"), the Debtor commenced this proceeding by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Code").

2.      On or about November 1, 2012, Village Commons WPB LLC, as landlord, entered into the Lease with Debtor for commercial property described as 911 Village Boulevard, Suites 803-806, West Palm Beach, FL 33409 (the "Premises"). A true and correct copy of the Lease is attached hereto as **Exhibit "A."**

3.      The Debtor purportedly conducts its business operations (a gym and fitness facility), to the extent it may still have any ongoing operations, at the Premises.

4.      On or about December 11, 2013, Jamestown's predecessor in interest[1] and the Debtor entered into a Lease Modification Agreement (the "Modification"). A true and correct copy of the Modification is attached hereto as **Exhibit "B."**

5.      Pursuant to the terms of the Lease (as modified and amended), the Debtor is obligated to pay rent, sales tax, and other minimum amounts, as more particularly described in the Lease, with the minimum rent and associated sales tax payable monthly in advance on the first day

---

[1] Jamestown succeeded to the interests of Village Commons WPB LLC including its rights as landlord under the terms of the Lease (as amended and modified) on or about July 30, 2014. A true and correct copy of the Special Warranty Deed is attached hereto as **Exhibit "C."**

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

of each month during the term of the Lease.  Under the Lease, effective July 1, 2017, the aggregate monthly rent payable in advance by the Debtor was $18,539.17, consisting of the following: a) base rent in the amount of $10,029.22; b) sales tax on base rent in the amount of $702.05; c) common area maintenance ("CAM") charges in the amount of $3,871.00; d) sales tax on CAM in the amount of $270.97; e) real estate taxes in the amount of $3,085.00; f) sales tax on real estate taxes in the amount of $215.95; g) trash removal in the amount of $341.10; and h) sales tax on trash removal in the amount of $23.88.  *See* Ex. A at Article II; Ex. B at ¶ 3.

6.      The Debtor was further obligated under the Lease (as amended and modified) to provide Jamestown within thirty (30) days after the end of each calendar year during the Lease term with a complete monthly statement showing the amount of its gross sales realized from the Premises during the immediately preceding calendar year, along with copies of corresponding filings made by the Debtor to the Florida Department of Revenue regarding same.  *See* Ex. A at Section 4.5.

7.      In addition to revising the minimum rent terms under the Lease, the Modification also amended the rentable square footage of the Premises, specifically deleting the phrase "6,043 rentable square feet" contained in Section 1.1(e) of the Lease, and replacing such provision with the phrase "6,132 rentable square feet."  *See* Ex. B at ¶ 2.

8.      Thereafter, on or about August 19, 2015, Jamestown and the Debtor entered into a First Amendment to Lease Agreement (the "Amendment").[2]  A true and correct copy of the Amendment is attached hereto as **Exhibit "D."**

9.      Pursuant to the Amendment, Jamestown was provided the ongoing absolute right to terminate the Lease (as amended and modified) in the event the Debtor fails to achieve minimum

---

[2] The Lease, Modification and Amendment may collectively be referred to as the "Lease Documents."

gross sales from the Premises of Ninety and 00/100 Dollars ($90.00) per square foot of the Premises at any point during calendar year 2016. *See* Ex. "D" at ¶ 2.[3]

10.     For calendar year 2016, the Debtor reported to Jamestown total gross sales from the Premises of $561,261.00, or total gross sales of $88.27 per square foot of the Premises for the entirety of calendar year 2016, thereby failing to meet the mandatory operating threshold set forth under the Amendment and in turn, entitling Jamestown to exercise its absolute right to terminate the Lease.[4]

11.     Additionally, the Debtor defaulted on its obligations under the Lease Documents by failing to pay all amounts due and owing to Jamestown under the Lease Documents.

12.     In accordance with the provisions of the Lease Documents and pursuant to applicable Florida law, Jamestown sent a three-day notice dated April 6, 2017 (the "3-Day Notice") advising Debtor of its monetary default under the Lease Documents and demanding that the Debtor cure the default of rent then past due in the amount of $166,566.81 or return possession of the Premises to Jamestown within three (3) days thereafter.   A true and correct copy of the 3-Day Notice is attached hereto as **Exhibit "E."**

13.     The Debtor failed to either pay the past-due rent or return possession of the Premises to Jamestown within the time set forth by the 3-Day Notice.

14.     Thereafter, as a result of the Debtor's failures under the Lease Documents, on or about April 19, 2017, Jamestown filed a Complaint for Eviction from Commercial Premises (the "Complaint") against Debtor in the matter styled *Jamestown Village Commons, L.P. v. Rock Elite*

---

[3] The Amendment further affirmed that for purposes of Debtor's sales reporting obligations under the Lease Documents, the term "gross sales" referred to the amounts reported by Debtor to the Florida Department of Revenue for sales tax purposes. *Id.*

[4] Jamestown intends to exercise its right of termination upon the earlier of either an Order by this Court authorizing same or the Debtor's emergence from bankruptcy.

*Fitness, LLC*, Case No. 50-2017-CC-004151-XXXX-MB, in the County Court in and for Palm Beach County, Florida (the "Eviction Action"). A true and correct copy of the Complaint filed in the Eviction Action is attached hereto as **Exhibit "F."**[5]

15.    On May 26, 2017, following an evidentiary hearing on the Rent Deposit Motion, the court in the Eviction Action entered an order requiring Debtor to deposit the sum of $171,000.00 into the court registry by 4:00 p.m. on June 12, 2017, the failure by which would entitle Jamestown to entry of an immediate Default Final Judgment without the necessity for further hearing (the "Rent Deposit Order"). A true and correct copy of the Rent Deposit Order is attached hereto as **Exhibit "G."**

16.    Notwithstanding, on June 12, 2017, at 1:54 p.m. (approximately two (2) hours before the Rent Deposit Order deadline), the Debtor filed for relief under the Code.[6]

17.    As of the Petition Date, the balance due to Jamestown under the Lease Documents from the Debtor was $192,079.45.[7]

18.    Since the Petition Date, the Debtor has failed to timely perform its post-petition obligations under the Lease Documents, including making late payment of its pro-rated June rent[8]

---

[5] Simultaneously with the filing of the Complaint, Jamestown also moved for entry of an order requiring the Debtor to deposit all outstanding amounts, in addition to all amounts coming due under the Lease, into the court registry during the pendency of the Eviction Action (the "Rent Deposit Motion").

[6] The circumstances leading up to the commencement of this bankruptcy, as further evidenced by paragraph 5 of the Debtor's Chapter 11 Case Management Summary [DE 20] suggest that the instant case has been filed in bad faith and for purposes of hindering and delaying Jamestown's efforts to enforce its rights under the Lease Documents and applicable state law. A petition filed in bad faith justifies the granting of relief from stay under 11 U.S.C. § 362(d). *See In re Dixie Broadcasting*, 871 F. 2d 1023, 1027 (11th Cir. 1989). The factors to be considered by a court in determining whether a petition has been filed in bad faith include (1) whether the debtor's financial problems are essentially a two-party dispute that can be resolved in a pending state-court action; and (2) whether the timing of the debtor's filing evidences an intent to delay or frustrate creditors, or that the petition was filed to circumvent pending litigation. *See In re Phoenix Piccadilly, Ltd.*, 849 F. 2d 1393, 1395 (11th Cir. 1988).

[7] By its own admission, the Debtor is indebted to Jamestown under the Lease Documents for no less than $114,000.00 as of the Petition Date [DE 1].

[8] Despite Debtor's post-petition June rent obligation becoming due and payable on June 13, 2017 pursuant to Section 365(d)(3), the Debtor did not remit payment in full of its payment obligation until the late afternoon of June 30, 2017.

and failing to make any payment of its July rent, which became due and payable on July 1, 2017, in the amount of $18,539.17, and is now subject to a five percent (5%) late fee pursuant to the terms of the Lease Documents.

## III.    RELIEF REQUESTED

### A. *Stay Relief Is Warranted Under Section 362(d)*

11 U.S.C. § 362(d) states, in relevant part, that:

> [o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as terminating, annulling, modifying, or conditioning such stay-(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; (2) with respect to a stay of an act against property under subsection (a) of this section, if---(A) the debtor does not have equity in such property; and (B) such property is not necessary to an effective reorganization…

Section 362(d)(1) is intended to "balance the interests of the creditors and the debtor." *See*, e.g., *In re Indian Palms Association, Ltd. (Nantucket Investors v. California Federal Bank)*, 61 F. 3d 197 (3rd Cir. 1995). While the term "cause" is not defined in 11 U.S.C. § 362(d)(1), courts decide whether cause exists to lift the stay on a case-by-case basis. *See In re Murray Industries, Inc.*, 121 B.R. 635, 636 (Bankr. M.D. 1990) (citing *In re McDonald*, 755 F. 2d 715, 717 (9th Cir. 1985)). The court looks to the totality of the circumstances in each particular case when making this determination. *See In re Bryan Road, LLC*, 382 B.R. 844 (Bankr. S.D. Fla. 2008). The decision to lift the stay is discretionary with the court and may be reversed only upon a showing of abuse. *See In re Dixie Broad., Inc.*, 871 F. 2d 1023, 1026 (11th Cir. 1989).

Further, the Debtor is required to pay the post-petition rent due under the Lease Documents in accordance with the plain language of 11 U.S.C. § 365(d)(3). Section 365(d)(3) provides, "[t]he trustee shall timely perform all the obligations of the debtor… arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or

rejected." *See* 11 U.S.C. § 365(d)(3); *see also In re Florida Lifestyle Apparel, Inc.,* 221 B.R. 897, 900 (Bankr. M.D. Fla. 1997) ("The plain language of Section 365(d)(3) mandates the trustee to comply with all obligations of the debtor with regard to any unexpired lease of non-residential real property until it is assumed or rejected regardless of Section 503(b)(1)"). Indeed, courts have made clear that a debtor's failure (such as here) to pay post-petition rent may serve as grounds to lift the automatic stay. *See In re Papadopoulos,* 2015 WL 996425, at *2 (S.D.N.Y. 2015) (citing *In re Taylor,* 1997 WL 642559, at *1 (S.D.N.Y. 1997)).

Here, the balancing test weighs overwhelmingly in Jamestown's favor, and cause exists to lift the stay. Indeed, for the entire duration of time (approximately 37 days) this case has been pending, the Debtor has yet to comply with either its obligations under the terms of the Lease Documents or the requirements of 11 U.S.C. § 365(d)(3); rather, the Debtor has repeatedly failed to make timely payment of its monthly post-petition rent due under the Lease Documents, placing Jamestown in the unenviable position of "hanging in the wind," left to wait and see if and when the Debtor may make its required payment under the Lease Documents. The Debtor's lack of any type of firm commitment or adequate assurance that it will (and has the capability) to make all payments under the Lease Documents has placed Jamestown in a position of harm— a position that far outweighs any prejudice that may be suffered by the Debtor by the granting of the relief sought herein.

Accordingly, based on the Debtor's ongoing defaults and continued failure to make timely payment of all rent accruing post-petition, the granting of relief by this Court in favor of Jamestown is not only justified under Section 362 of the Code, but is likewise the only equitable outcome under the instant circumstances.

**B. Alternatively, the Debtor Should Be Compelled To Assume Or Reject The Lease Documents**

Alternatively, to the extent the Lease Documents are subject to the provisions of § 365, it is appropriate under the instant circumstances to require the Debtor to decide within a specified period of time whether to assume or reject the Lease Documents. The harm caused to Jamestown by the Debtor's ongoing defaults under the Lease Documents, coupled with the uncertainty of future performance of the Debtor, far outweighs any harm that would result from requiring the Debtor to decide whether to assume or reject the Lease Documents within a shortened period of time. Additionally, based on Jamestown's known intent to exercise its right of termination upon authorization from this Court or the Debtor's emergence from bankruptcy, there is no reason for the Debtor to wait 120 days before making a decision regarding the Lease Documents. As such, Jamestown requests that the Court, pursuant to § 365(d)(2), order the Debtor to determine within a shortened period of time whether to assume or reject the Lease Documents in this matter.

Section 365(d)(2) allows a creditor who cannot afford to be left in limbo about its status *vis-à-vis* the estate to ask the court to impose a deadline on the debtor to decide whether to accept or reject a lease. *See In re Sae Young Westmont-Chicago*, 276 B.R. 888, 893 (Bankr. N.D. Ill. 2002). In determining whether to set a deadline to assume or reject a lease prior to confirmation, courts have utilized a balancing test, weighing a debtor's need to carefully consider whether rejecting the lease is in the best interest of the estate against the landlord's interest in knowing whether the debtor will perform under the subject lease. *See Matter of Whitcomb & Keller Mtg. Co., Inc.*, 715 F. 2d 375, 379 (7th Cir. 1983).

The instant set of circumstances are the exact type contemplated by § 365(d)(2). Here, based on the Debtor's ongoing defaults, in addition to the complete absence of any record to suggest that the Debtor will have the financial ability to satisfy its post-petition obligations under

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

the Lease Documents or, at a minimum, provide Jamestown with adequate assurance of future performance under the Lease Documents, the balances weigh heavily in favor of requiring the Debtor to make an immediate decision regarding whether to assume or reject the Lease Documents.  Indeed, it would be entirely inequitable for the Debtor to be afforded the benefits of the Lease Documents, without paying post-petition rent, all to the detriment of Jamestown. Moreover, as Jamestown has made clear its intent to exercise its right of termination under Section 2 of the Amendment irrespective of whether the Debtor cures its pre-petition arrears, delay in formally assuming or rejecting the Lease Documents serves no benefit to the Debtor, instead such delay only serves as a burden to the Debtor's estate.  As such, based on the Debtor's failure to comply with its obligations under Section 365(d)(3), in addition to Jamestown's intent to exercise its termination rights, good cause exists to compel the Debtor to decide whether to assume or reject the Lease Documents immediately under Section 365(d)(2).

## IV.    <u>CONCLUSION</u>

Based upon the foregoing, Creditor/Landlord, Jamestown Village Commons, L.P., respectfully requests that this Court enter an Order (i) granting Jamestown relief from the automatic stay; or, in the alternative, (ii) compelling the Debtor to assume or reject the Lease Documents within a shortened period of time pursuant to 11 U.S.C. § 365(d)(2); and (iii) granting such other and further relief as the Court deems just and proper.

WE HEREBY CERTIFY that we are admitted to the Bar of the United States District Court for the Southern District of Florida and are compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

WE HEREBY CERTIFY that a true and correct copy of the foregoing was filed this 19th day of July, 2017, with the Clerk of the Court using the CM/ECF system and that a true and correct copy of the foregoing was served via CM/ECF electronic transmission upon those parties who are

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

registered with the Court to receive notifications in this matter; and upon all creditors and interested parties listed on the Court's official mailing matrix (attached) by US Mail.

Respectfully submitted,

/s/David H. Haft
Ricardo A. Reyes (rar@tobinreyes.com)
Florida Bar No. 864056
David H. Haft (dhaft@tobinreyes.com)
Florida Bar No. 68992
*Attorneys for Jamestown Village Commons, L.P.*
TOBIN & REYES, P.A.
225 N.E. Mizner Boulevard, Suite 510
Boca Raton, Florida 33432
Tel:    (561) 620-0656
Fax:    (561) 620-0657
Primary Email: eservice@tobinreyes.com
Secondary: mhorton@tobinreyes.com
Secondary: dboentgen@tobinreyes.com

```
Label Matrix for local noticing      Palm Beach County Tax Collector     Rock Elite Fitness, LLC
113C-9                               c/o Orfelia M Mayor Esq             911 Village Blvd. Suite 804
Case 17-17314-PGH                    POB 3715                            West Palm Beach, FL 33409-1938
Southern District of Florida         West Palm Beach, FL 33402-3715
West Palm Beach
Wed Jul 19 15:39:15 EDT 2017

Department of Revenue                Internal Revenue Service            (p)INTERNAL REVENUE SERVICE
5050 W. Tennessee Street             Central Insolvency Operation        CENTRALIZED INSOLVENCY OPERATIONS
Tallahassee, FL 32399-0100           P.O. Box 7346                       PO BOX 7346
                                     Philadelphia, PA 19101-7346         PHILADELPHIA PA 19101-7346


Jamestown Village Commons LP         Key Bank                            Office of the US Trustee
675 Ponce de Leon Ave., NE, 7th Floor 4910 Tiedeman Road                 51 S.W. 1st Ave.
Atlanta, GA 30308-1884               Cleveland, OH 44144-2338            Suite 1204
                                                                         Miami, FL 33130-1614


Palm Beach County Tax Collector      Ron Riaker                          Ross Riaker
Attn.: Legal Services Department     17679 82nd Rd N                     17679 82nd Rd N
301 N. Olive Avenue, 3rd Floor       Loxahatchee, FL 33470-2926          Loxahatchee, FL 33470-2926
West Palm Beach, FL 33401-4700


State of Florida - Department of Revenue Craig I Kelley                  Dana L Kaplan
Post Office Box 6668                 1665 Palm Beach Lakes Blvd #1000    1665 Palm Beach Lakes Blvd #1000
Tallahassee, FL 32314-6668           West Palm Beach, FL 33401-2109      W Palm Beach, FL 33401-2109
```

          The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
          by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

```
Internal Revenue Service             (d)Internal Revenue Service         (d)Internal Revenue Service
The Honorable Benjamin Greenberg     The Honorable Jess Sessions         c/o IRS District Counsel
Acting US Attorney                   Atty General United States Dept Justice Claude Pepper Federal Bldg
99 NE 4th Street                     Tenth & Constitution                51 S.W. 1st Ave., 11th Floor
Miami, FL 33132                      Washington, DC 20530                Miami, FL 33130
```

          The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
(u)Jamestown Village Commons L.P.    (u)West Palm Beach                  End of Label Matrix
Tobin & Reyes, P.A.                                                      Mailable recipients      14
225 NE Mizner Blvd., Ste. 510                                            Bypassed recipients       2
Boca Raton                                                               Total                    16
```